In June, 2015, the plaintiff filed a complaint in the Superior Court, raising a number of claims arising out of his purchase of four 1960s-era racecars from the defendant, Lilo Ben Zicron. The parties engaged in mediation, and in April of 2016, they executed a written settlement agreement (agreement). The agreement required the defendant to pay $950,000 to the plaintiff pursuant to certain terms and conditions. If the defendant satisfied all of its terms, the parties would file a stipulation dismissing the Superior Court case with prejudice. The agreement also required the defendant to execute an agreement for judgment for $950,000, to be held in escrow by plaintiff's counsel, which would only be filed pursuant to the terms of the agreement.
The agreement required the defendant to sell three of the plaintiff's vehicles on a consignment basis pursuant to a schedule. The defendant was to remit the proceeds of each sale to the plaintiff, to be applied to the $950,000 debt. The first vehicle, a 1969 Lola racecar, was to be sold by October 20, 2016. On October 19, defendant's counsel sent plaintiff's counsel a document purporting to be a purchase agreement for the 1969 Lola. It required the buyer, Gideon Group Holdings, LLC (Gideon),[2] to pay the defendant in three installments: a $10,000 deposit upon execution of the purchase agreement, a $132,500 payment due January 15, 2017, and a final payment of $132,500 due March 15, 2017. The purchase agreement stated that the defendant would retain possession of the vehicle and its "ownership documents" until the final payment was made.[3]
Plaintiff's counsel replied by sending the defendant a notice of breach, stating that the purchase agreement did not constitute a timely "sale" by October 20, 2016, as mandated by the agreement. The defendant denied breaching any part of the agreement. As a result, the plaintiff filed a motion for entry of judgment.[4] After a nonevidentiary hearing, a judge allowed the motion. The defendant now appeals.[5] We affirm, but for reasons different from those of the motion judge. See Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 639 (2002). See also GTE Prods. Corp. v. Stewart, 421 Mass. 22, 36 (1995).
Discussion. "A settlement agreement is a contract and its enforceability is determined by applying general contract law." Sparrow v. Demonico, 461 Mass. 322, 327 (2012). It is uncontested that the agreement is a valid and enforceable contract between the parties. Rather, the heart of the parties' dispute is the construction of the terms "sale" and "sell," which are undefined in the agreement.[6] The defendant argues that the terms "sale" and "sell" should be construed to include installment sales such as the one reflected by the purchase agreement, thereby making that a timely sale under the agreement, even though the entire purchase price would not be paid until five months later. We are unpersuaded.
The parties acknowledge that the sale of the 1969 Lola was a consignment sale under the terms of the agreement. Such a sale is governed by Article 2 of the Uniform Commercial Code (UCC). G. L. c. 106, §§ 2-101 et seq. According to the UCC, "a 'sale' consists in the passing of title[7 ] from the seller to the buyer for a price." G. L. c. 106, § 2-106(1). Concerning passage of title, "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods...." G. L. c. 106, § 2-401(2). Here, the defendant and Gideon included no language in their purchase agreement governing passage of title. The defendant submits that, because no title document exists[8] for the 1969 Lola, and because the purchase agreement specified that the vehicle would remain in the defendant's possession until the entire purchase price is paid, UCC § 2-401(3)(b ) applies ("if the goods are at the time of contracting already identified and no documents of title are to be delivered, title passes at the time and place of contracting"). We disagree.
The defendant's physical retention of the 1969 Lola is not dispositive of "the time and place at which the seller completes his performance with reference to the physical delivery of the goods" under the UCC. G. L. c. 106, § 2-401(2). Section 2-503(1) describes acceptable methods of a seller's tender of delivery and states in part: "Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery. The manner, time and place for tender [of delivery] are determined by the agreement and this Article ..., and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession...." (Emphases added). G. L. c. 106, § 2-503(1) Thus, in a transaction where the goods do not physically move, the inquiry into whether title has passed and a "sale" has occurred focuses on "whether goods are placed within the actual or constructive possession of another." Circuit City Stores, Inc. v. Commissioner of Rev., 439 Mass. 629, 637 (2003) (Circuit City ).
Here, while the purchase agreement specified that the 1969 Lola was to be sold "where is," i.e., it would remain at the defendant's shop, it also provided that "[the defendant] shall retain possession of the Vehicle and any ownership documents until the entire purchase price is paid." Unlike the store in Circuit City, supra, here the defendant did not hold the 1969 Lola "at the buyer's disposition," upon execution of the purchase agreement; nor is there anything in the record to suggest that the defendant notified Gideon that he was prepared to tender the vehicle to it at that time. See Mechanics Natl. Bank v. Gaucher, 7 Mass. App. Ct. 143, 149 (1979) (no sale of mobile home occurred because customer did not tender full purchase price and dealer failed to transfer possession by delivery to customer). Instead, the purchase agreement plainly states that Gideon has the right to possess the vehicle only after the full purchase price is paid. As such, the defendant's performance, and thus the sale of the 1969 Lola, would only be completed with respect to delivery once Gideon made the last payment in March of 2017.[9] Thus, construing the purchase agreement pursuant to Article 2 of the UCC, the sale of the 1969 Lola would not occur until title passed to Gideon in March of 2017, well outside the October 20, 2016, deadline. Therefore, we conclude that the mere execution of the purchase agreement between the defendant and Gideon did not constitute a timely "sale" under the terms of the agreement.
Accordingly, we agree with the Superior Court judge that the defendant materially breached the agreement when he failed to sell the 1969 Lola by October 20, 2016, justifying the entry of judgment against the defendant.
Amended judgment affirmed.
Order denying motion for reconsideration affirmed.

Records from the Nevada Secretary of State indicate that Gideon's officers are Jonathan Benzicron, Klara Benzicron, and Puah R. Benzicron, whose addresses are the same as the defendant's. The purchase agreement was signed on behalf of Gideon by a "Puah Benz Sol."

Gideon paid the $10,000 deposit, which the defendant then paid to the plaintiff pursuant to the agreement.

The plaintiff filed his motion for entry of judgment because the defendant failed to provide him with an executed agreement for judgment, as the agreement had required. While the latter failure, by itself, arguably breached the agreement, the plaintiff also failed to give the defendant the required notice of breach of that condition. In light of our holding, we express no opinion on the issue.

The defendant also appeals the denial of his motion for reconsideration, wherein he raised, for the first time, many of the arguments he now makes on appeal.

Because the parties cooperated in the drafting of the agreement, they included language in it providing that any ambiguity in any provision therein would not be construed against either party.

While the UCC "instructs us ... that the rights and obligations of parties under the [UCC] should be sorted out without traditional dependence on the concept of title," Mechanics Natl. Bank v. Gaucher, 7 Mass. App. Ct. 143, 146 (1979), strict reliance on the passing of title is nevertheless required when an applicable UCC provision "refers to such title." G. L. c. 106, § 2-401. Such is the case here.

The judge evidently assumed that the 1969 Lola did have a title document, due to references in the agreement to a title document for a different vehicle.

It is not stated in the record whether Gideon ever made the final payment and received possession of the 1969 Lola.